Morning is number 2311699, Sonny Austin Ramdeo v. United States of America. Mr. Adler. May it please the court. Andrew Adler from the Federal Defender's Office on behalf of Sonny Ramdeo. This appeal presents a narrow but important legal question. Whether federal prisoners can use quorum nobis to challenge the non-custodial aspects of their sentence like restitution. We submit that quorum nobis was designed precisely for this situation because as this court's decisions make clear, there is no other remedy available. No 2255, no 2241, no audits of querula. And the Supreme Court in Morgan tells us that quorum nobis was designed to fill these gaps in the remedial framework. Now, the district court in this case denied relief on the sole ground that Mr. Ramdeo was not eligible for relief because he remained in custody. That was an error of law. There are at least three reasons why that cannot be right. First, it would require prisoners to serve out their entire terms of custody before they can file a claim. Talking years, decades, and our legal system encourages the timely submission of claims, not needless delay. Second, there are people doing life sentences, life terms of supervised release. They're always going to be in custody. There is no reason why they should be shut out with regard to the ability to challenge restitution. And third, and perhaps most fundamentally, if out-of-custody prisoners can challenge restitution, then in-custody prisoners must be able to as well under the congruence rationale that this court has already adopted in a pair of cases, Mamone, a 2255 case, and Arneas, a 2241 case. And the congruence rationale in those cases is exactly what it sounds like with respect to restitution. There's no basis to treat in-custody and out-of-custody prisoners differently because restitution, after all, has nothing to do with custody. And this is the exact same rationale that Judge Calabresi relied on in his Kaminsky opinion. The government has no answer to this congruence rationale. It doesn't even cite Arneas or Mamone in its brief in this case. As far as I can tell, the only way to get around this congruence is to go even further than the district court and to say that not even out-of-custody prisoners can use quorum nobis to challenge restitution. Again, as far as I can tell, no circuit has gone that far because you immediately encounter a problem, which is that there is no way then to remedy fundamental errors with regard to restitution. And the most important fundamental error that we need to bear in mind here is violations of the right to counsel. Just assuming for the sake of argument that quorum nobis would be available to him, I mean, how is this a fundamental issue? So sure, Your Honor. A couple of things about that. His claim, of course, is that this $21 million restitution award is $18 million too high. He is claiming violations of the Sixth Amendment, ineffective assistance of counsel, Brady, newly discovered evidence, false testimony. His claim is extremely complicated. This is a very complicated fraud case. The district court expressly declined to address the merits. The government has never addressed the merits at any point in this case. So I would caution the court against sort of opining on the merits of this case. But if there's any sort of fundamental error, I think an $18 million excessive restitution award due to, for example, ineffective assistance would probably meet that threshold. That could be a fundamental result of an error, right? But I'm not sure that the end result necessarily correlates to the nature of the error. Can you talk about that? Sure. So the Supreme Court in Morgan found that the denial of counsel rose to the level of a fundamental error, even though the person in that case had already served out the term. And so I think that rose to the level. I agree. Denial of counsel is a fundamental error, but it seems like the fact that even though it may or may not have ultimately made a difference in the outcome, whereas here he's alleging a very substantial difference in the outcome, but I'm not sure that that means that the error itself was fundamental in a way that undermines the justice of our system in a more fundamental way. Does that make sense? Sure. So that's why I'm focusing on the IAC aspect of this, because I think that is the most fundamental aspect of his claim. Putting aside the end result, I mean, if there's an egregious, ineffective assistance of counsel, there's got to be some way to vindicate that, to remedy that. There is a Sixth Amendment right to counsel at the criminal sentencing, and restitution is part of that. And so if there's a denial of counsel, egregious ineffectiveness, there has to be a way to remedy that. Does that mean you would say that any time someone is alleging ineffective assistance of counsel, that that qualifies as fundamental error? I'm not sure the cases would support that. So, Your Honor, I don't think any cases actually address that question, and I don't think the court needs to answer it here. I think all the court needs to say here is that there may be some cases in which ineffective assistance of counsel rises to that level. And I'm not aware of any situation in our law that would prevent somebody, at least one opportunity, to vindicate their Sixth Amendment right to counsel at the sentencing phase of their case. There's always a way to do that. For federal prisoners, it's always going to be 2255, except in this narrow context where we're talking about restitution or fines. And so I just want to emphasize the narrowness of the question here, because we are not, I mean, if you are bringing a claim challenging your conviction, or your term of incarceration, you know, you have to bring that under 2255. That's your exclusive remedy. We just know that restitution claims cannot be brought that way, because this court has said so in Blake and Mamone, because it does not seek your release from custody. There's got to be a way to do that. And again, this is not what the district court addressed in this case. All the district court said is, he's out of custody, so he's not eligible. And I think what happened here is the district court made a couple of mistakes in reading the case. Understandable mistakes, but mistakes nonetheless. And it misread this court's decisions in Garcia and Brown, which referred to him, you know, the defendant being out of custody. But of course, that case arose in the context of a challenge to the custodial term, which can and therefore must be brought in 2255. We don't have that here. Let's talk about Garcia for a minute. In that case, 2255 relief was foreclosed because the petition was second or successive. So that's a case where there was no relief under 2255, and yet the petition was denied. Yes, but I understand the relevant part of the opinion to be, the district court to be on this reference to being out of custody. But the context of that rose in a claim that could have been brought in 2255. Now, it may have been second or successive and therefore was denied for that reason. But the reason he couldn't bring it in Coram Nobis is because the claim was cognizable in 2255. And that's, we don't have that here. Now, with the second case that the district court misread is the Supreme Court's decision in Morgan. Another case that the government, by the way, doesn't even cite, and it's brief in this case. And it's true that the defendant in that case was out of custody, but that was not the critical fact there. The critical fact was that because he was out of custody, he could not bring a 2255. Again, exactly the same situation here. Yes, Mr. Ramdeo is in custody, but he cannot bring his claim in a 2255 because it's not cognizable. And so we have the exact same situation that we have in Morgan where Coram Nobis has to come in and fill the gaps in the remedial framework. And so I think once you conclude that there is no out-of-custody requirement for restitution-like claims here, then I think this case is just over because that is the only basis that the district court used to deny relief here. Is the reading of Garcia that it just doesn't even reach the in-custody portion or that even if it tried to reach that, it was dicta because it wasn't relevant there? So I believe that Garcia simply cited Brown. He said Brown. And Brown, I think, is the more important decision because there's actually some reasoning there about this. And what Brown says is that he's challenging his conviction. You've got to bring that in a 2255. And actually, we're going to recharacterize this as a 2255 because that's the only way it's cognizable. And then I believe in Garcia, the court simply cited Brown and used this sort of broad language. You just don't even think that Brown attempted to get to the in-custody question, no matter how you might read the language? I'm not sure, Your Honor. My point is simply that it arose in a fundamentally different context where the claim was cognizable in 2255. And we know that where you can bring it in a 2255, you've got to bring it there. And therefore, extraordinary writs like quorum nobis are not available. This court has said that in many cases. So I think that is the case. Now, certainly, I do not think the court in any of those cases went further and addressed whether a restitution claim, something that is not cognizable in 2255, can be brought in quorum nobis. That is why this court expressly left the question open over a decade later in footnote three of Arneas. And again, in Mr. Ramdeo's earlier audita querula appeal in footnote two. And I think that footnote is where this court recognized that this is an open question because unlike the vast majority of other claims that we see challenging a conviction or a term of incarceration, this is just not, this is different because you can't bring it any other way. If we were to get to the merits of the quorum nobis, Mr. Ramdeo raised this claim on direct appeal and he also raised it in a 2255 motion. So why does he not have other avenues of relief? So he didn't raise the claim that he is raising now on direct appeal. He couldn't. He can't raise an IAC claim on direct appeal. We know that. He challenged the restitution. Sure, but he didn't allege IAC because he could not on direct appeal. 2255 is a little bit different. He raised a number of claims, was ultimately limited in the number of claims he could raise. But we know from this court's case law that his claims now are not cognizable in a 2255 motion. So he may have tried to raise these claims and failed, but they are not cognizable. And then he tried via audita querula and this court said, actually, this is more like a quorum nobis. You should try it that way. So there's just no other way that you can raise an IAC claim or the other sort of claims based on newly discovered evidence. You can't raise that on direct appeal either. So this is really the only way. Thank you. Mr. Mendes, may it please the court. In 2015, more than nine years ago, following a hearing that spanned three days, the district court ordered Ramdale to pay over $21 million in restitution. And in the years since, Ramdale has repeatedly challenged that decision and sought to reopen the criminal judgment. Most recently, he challenged the restitution through quorum nobis, but not every tool is intended for every job. Quorum nobis is unavailable to him for several reasons. Notably, the writ is unavailable because he remains in custody and because his quorum nobis claims are substantively the same as those previously presented to the district court and to this court. On direct appeal, in his Audito Corrella petition and in his 2255. This therefore presents a particularly bad case to expand quorum nobis's availability. In any event, although he has already challenged restitution on multiple occasions, Ramdale is still not without recourse. He can utilize the MVRA, the Mandatory Victims Restitution Act, to request changes to the restitution payments while he's incarcerated. And once out of custody, he can seek relief via quorum nobis if he can also allege, as was already alluded to, fundamental error. But under the MVRA, isn't that limited to his ability to pay the restitution amount rather than challenging the restitution order itself? Correct. I think that it has to do with the payment schedules mostly, so he can request to adjust it so that he wouldn't be suffering any prejudice in the meantime. And I think that this is also a case why there's also a reason why this particular case is not a great vehicle for this because Mr. Ramdale is not serving a life sentence as was alluded to before. He's due to be out of custody in a few years. And so I also wanted to talk a little bit about the fundamental error because that was alluded to in the previous line of questioning. Fundamental error, as cited in our brief, in this context, in quorum nobis context, doesn't contemplate the sort of challenge to restitution, to a non-custodial aspect of sentence that is the case here. So the case law talks about fundamental errors being the sort of thing where the validity and the regularity of the legal proceeding itself, such as the defendant being underage or having died before the verdict, those are being the sorts of things that are fundamental error. But not whether the district court's decision was, and restitution was several million dollars more than the defendant would have liked. And in fact, this court, in its decision on the Auditore Corrella case, ended up considering his motion under Auditore Corrella, but it agreed with the district court that this was probably more of an attack on the validity of the sentence, and it considered it under that basis. I think that it's also important to note that fundamental error, to whether something is a fundamental error, is not a merits question. We view it more as a procedural, you have to allege a fundamental error to get inside the door and to use the example of quorum novus, much like this court does when considering certificates of appealability in the 2255 context, or whether a defendant alleges an error that would go towards being able to file a second or successive 2255. So it has to do with the alleged claim being a fundamental error, it's not a merits question that has to be considered to determine whether it's a fundamental error. So he needs to allege a fundamental error to get in the door, he needs to not have actually argued this before, and it being denied. And actually I want to talk a little bit about that, because Mr. Adler talked about how 2255 is unavailable and in this context, because the case law prevents attacks on a non-custodial aspect of a sentence, but the point in fact is that in this case, he did actually argue ineffective assistance of counsel and much of the same claims that he argued in his quorum novus petition, and those claims were in fact considered on the merits by the magistrate judge and adopted by the district judge. So he already had that avenue, the same avenue, the same claims that he presents right now, he had it under 2255 and he was already, and those claims were already considered and denied on the merits. So Mr. Ramdale had, like I was hearing, the direct appeal where he argued his restitution. The Ardita Corella, the 2255 and now quorum novus, and I think quorum novus, according to the case law, does not contemplate a defendant that would have had so many, much less one avenue for relief, so many other avenues for relief, and in fact availed himself of those avenues of relief to continue claiming his arguments. Why don't you think that we have more attempted quorum novus filings? Obviously 2255 is not known for its dearth of filings from prisoners. Why don't you think we have more quorum novus filings as well? I think that because 2255, as you seem to be alluding to, does encompass a wide swath, especially if it's your first 2255, in terms of the sorts of things that you can argue also on direct appeal, and quorum novus was never contemplated. So backing up a little bit to answer your question, Judge, quorum novus is obviously a common law writ and 2255 is what Congress intended to be the primary vehicle for collateral attacks. And so quorum novus, I think there's a, I can't recall the case name right now, but we have it on our brief, and how the Supreme Court basically contemplated how it's hard to imagine a case where a quorum novus claim could, it's from the 1990s, could be brought in now, especially now that 2255 exists and direct appeal exists. I will say 2255s are also not known for their rate of success, right? It's not like there's a huge number of really successful 2255s. So it's just interesting that I don't think that the rate of success is what's driving the initiative of all of the former defendants. Right. And I think that when Congress decided to pass the 2255 statute, I think it restricted, it built in restrictions on 2255 because, and I think the Supreme Court alluded to this last year in Jones versus Hendricks, how sometimes there comes a point where even error correction, and even in the context of what was at issue at Jones versus Hendricks, when it's someone's liberties at stake, there comes a point in a criminal case where you have to, where, you know, the finality governs in the end. And so to allow for the reopening of criminal judgments, I think that's what Congress's partial motivation in 2255 in limiting the timeliness aspect of it and limiting, you have one shot, and then if you want to do second or successive ones, it can only be on a particular basis. I think that was part of the rationale, the finality rationale. And actually, if quorum nobis is expanded to what is being advocated today by Mr. Ramdale's counsel, I don't see what principled reason it should be limited to restitution only. So alluding back to Jones versus Hendricks last year, which we cite in our brief, the Supreme Court rejected the notion or the use of the saving clause in the context of change in statutory interpretation. So I think the issue there was the Ray Haif case where the 922G, the Supreme Court decided that, decided in that case that one of the elements of a 922G conviction is the knowledge of the defendant of his status as a previously convicted felon. And I don't see how the decision that Mr. Adler is advocating for can possibly be principally be limited to the restitution context. If the argument can also be made that a defendant who was convicted many, many years ago and had no of Ray Haif coming down years later can't even avail himself of the savings clause of 2255 because of the Supreme Court's decision last year, and that is actually something that implicates that person's liberty. Whereas here, we're talking about restitution. So if we're opening up quorum nobis, I don't know how that would not undermine the Supreme Court's decision from last year. So to conclude, for the reasons included in our brief and today, the district court's decision should be affirmed. If there are no further questions, we rest on our brief and what we argued today. Thank you. So Judge Grant, going to your question, we know that our position has been the law since 1986 in the Seventh Circuit. I'm not and reaffirmed again in 1997 in the Mishler and Barnicle cases. As far as I'm aware, there's no floodgates of quorum nobis petitions being filed in the Seventh Circuit, and the reason why is because people don't care about their restitution and fines. They care about their convictions and their term of incarcerations. That's what the claims are challenging, and those claims, we all know, have to be brought in 2255. So we're talking about a very small swath of post-conviction claims here. Now, as to my opposing counsel's argument, there's no limiting principle here. There absolutely is. This court's cases have already said it repeatedly. When you have an avenue in 2255, when your claim is cognizable there, you have to use that. You cannot use quorum nobis. That is why claims challenging convictions, terms of incarcerations have to be funneled through 2255. If you try to bring a quorum nobis claim, challenge your conviction or your term of imprisonment, it's going to be denied because that's an extraordinary writ, and as the Supreme Court explained in Morgan, it's reserved only for subsequent cases, and this court explained this in the Holt case in 2015. It's only reserved where there's no other remedy available. That's the limiting principle. That's why we don't see these claims being filed very often. The MVRA, I mean, the government concedes in its brief on page 23 that that's not available here. You can't bring collateral attacks under the MVRA. You can't bring an IAC claim under the MVRA, so that's not available. As for Mr. Ramdeo himself, he's not out of custody until 2031, so he's got to wait seven years before he can bring this claim. That doesn't make any sense. The district court's rationale would require people to just wait until they're out of custody. We're going to require people to wait decades before they can bring these sort of claims. That doesn't make any sense, yet that is the position of the district court in this case. I don't really hear the government to be defending the district court's position here. I hear the government to be arguing, basically, you can never have any post-conviction remedy to challenge restitution. I think no circuit has gone that far. That would be very dangerous. I think the best way to think about it, again, is in terms of IAC claims. There has to be a way for federal prisoners to vindicate their Sixth Amendment right to counsel at sentencing. In this particular case, let's talk about that, because my opposing counsel said, well, this claim was brought in the 2255 and rejected on merits, but it really wasn't. If you read this part of the R&R, it's pages 31 to 37. Footnote two is very important because the magistrate judge in that case overlooked the new evidence that Mr. Ramdeo had filed. There's some confusion about that. It's at docket entry 3-1. He filed a bunch of exhibits. They never got considered. His IAC claim, by the way, now is against CJA counsel David Pleasanton, and it's actually supported by the sentencing transcript in this case. At the second day of sentencing, Mr. Pleasanton acknowledged that he had never sought an expert accountant at all before that point in time to do the loss calculation in this case. This is a major fraud case. That's the first thing you got to do in one of these cases. He didn't do it. It's on pages 169 to 170, docket entry 203. There's also testimony by the government's own agent at the second day of sentencing, Agent Bardfeld, where she says, you know what, nobody really came to—there's an FBI office where all the bank records were being held, and Pleasanton doesn't go. He doesn't review the bank records. There's got to be a way for Mr. Ramdeo to vindicate his Sixth Amendment right to counsel when we're talking about a potentially $18 million surplus in restitution. There's just got to be a way to do that, and under the government's position, there would never be any remedy, and if you can't remedy Sixth Amendment violations, then it's just not a right anymore. So the Audit Sequeira ruling, I'm not quite sure why the government is pointing to that because this court repeatedly said in that opinion, look, this is not the right vehicle for your claim. Audit Sequeira is about, you know, challenging the enforcement of the restitution judgment, not attacking the validity. That's what this court said. Footnote 2 says, you know, we're not opining on, you know, the court—whether quorum nobis is available in these circumstances. So that's why we're here today. That was five years ago. So I think, you know, it would really be helpful for this court to actually rule on the legal question that's presented here and not go even further. I think this court could reserve these sort of things for the other day. What rises to the level of fundamental error? The Seventh Circuit thought that a claim that was far less fundamental in my view qualified for quorum nobis relief in the Mishler case. That case didn't even involve IAC. It was simple miscalculation based on inaccurate information. Seventh Circuit granted relief in that case, right? And so this court may not agree with that, but that case is out there. It's been the law for nearly 40 years. We don't see a flood of petitions being filed, and so all I think the court needs to say here is that the district court's out-of-custody requirement was an error of law for the reasons I said at the opening, and then simply vacate and remand for further proceedings. So you've been citing the Seventh Circuit a lot, and just to the issue of whether this is a fundamental error, the Seventh Circuit also in the Wilkazek case talks about issues that are fundamental or those that undermine our confidence that the defendant is actually guilty. So if you're going to walk the walk of the Seventh Circuit, how do you address that? Sure. So we acknowledge that there's some sort of broad language in that opinion, but I think the actual holding of that case is much narrower. The claim in that case was that a third-party lender didn't actually rely on the fraudulent statements, and the court's actual holding, I think, was that that sort of claim that this was not a victim for restitution purposes doesn't rise to the level of fundamental error, and in fact, the defendant's plea agreement actually admitted that the lender did rely on the fraud, so that failed. And I think if the court was going further to suggest that you could never use quorum nobis unless it's an actual innocent situation, I think that would conflict with the court's earlier precedence in Mishler and Barnicle, and under Seventh Circuit Rule 40E, if you're going to, one panel can't overrule a prior panel unless you circulate it to the full court, and you've got to drop a footnote saying that you've done that. There's no such footnote in the Wilkazek case, so I don't think that's how it should be read. Thank you very much.